663 So.2d 438 (1995)
Felice Foster FOWLER, wife of/and Gene D. Fowler
v.
Sam J. BAUMAN, Jr., Union Carbide Corporation, et al.
No. 95-CA-0145.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1995.
*439 William J. Faustermann, Jr., Slidell, for plaintiffs/appellants.
Dominic J. Gianna, Marshall J. Simien, Jr., Middleberg, Riddle & Gianna, New Orleans, for defendants/appellees.
Before SCHOTT, C.J., and KLEES and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiffs Felice and Gene Fowler appeal a trial court judgment on a jury verdict in favor of defendant Sam J. Bauman Jr. We affirm.

Facts
On March 16, 1977, Mrs. Fowler suffered injury to various parts of her body as a result of an accident between the 1969 Chevrolet Nova she was driving and a tractor-trailer driven by Mr. Bauman on Interstate 10 East just before the Louisa Street exit in the City of New Orleans. By the time of trial, 17 years after the accident, most of Mrs. Fowler's injuries had been resolved; however, she continued to experience pain in her neck and shoulders.
At trial, the drivers of the two vehicles described the accident very differently. Mrs. Fowler claims that she was driving in the right lane when the tractor-trailer driven by Mr. Bauman, which had been in the center lane, started moving into the right lane, forcing her car up against the right guard rail. As a result of the accident, she lost consciousness. She later awoke to find that her car had collided with the left guard rail.
Mr. Bauman's testimony agrees with Mrs. Fowler's testimony in two respects: (1) He agrees that the collision between the vehicles occurred while he was in the process of moving from the center lane of traffic to the right lane, and (2) he agrees that Mrs. Fowler's car ended up against the left guardrail of the interstate. However, Mr. Bauman claims that Mrs. Fowler's car was in the left lane of the interstate at the time of the collision. He claims that she ran into him as he was changing lanes, then lost control of her vehicle, careening into the left guard rail.
*440 The only expert testimony presented at trial was the testimony of Alan Wright, who stated that the physical damage to the two vehicles indicated that the accident occurred as described by Mr. Bauman, and that it could not have occurred as described by Mrs. Fowler. In order to reach his conclusion, he relied on photographs of the two vehicles, as well as specifications and measurements of the two vehicles and of the interstate highway at the point of the collision.
Following a two-day trial, the jury returned a verdict in favor of the defendant, which was entered as the judgment of the trial court. On the verdict form, the jury indicated both that Mr. Bauman was not negligent and that Mrs. Fowler was negligent in causing the accident. The plaintiffs filed a motion for new trial, which the trial court denied.
Mr. and Mrs. Fowler appeal, making the following three assignments of error:
1. The jury was clearly wrong in concluding that the defendant, Sam J. Bauman, Jr. was not negligent.
2. The trial court erred by failing to convene court after a specific jury request for a document referred to in testimony but not admitted into evidence.
3. The trial court erred by failing to exclude the testimony of Alan Wright, and/or in excluding and limiting testimony of plaintiffs' expert and lay witnesses.
The third assignment of error will be addressed first since it impacts on the discussion of the first assignment of error.

Admission and exclusion of testimony
By their third assignment of error, the plaintiffs complain both of the admission of testimony from the defendant's expert witness, Alan Wright, and the exclusion of "plaintiffs' expert and lay witnesses." In their brief, the plaintiffs take issue with the admission of Mr. Wright's testimony for two reasons. First, the plaintiffs claim that Mr. Wright's testimony should not have been admitted because he failed to prove that his conclusions were based on methodology which is "generally accepted in the scientific community" as required by this court's opinion in Clement v. Griffin, 91-1664 (La.App. 4th Cir. 3/3/94), 634 So.2d 412, writs denied 94-0717 (La. 5/20/94) 637 So.2d 478, 479 which adopted the standards for acceptance of expert testimony established by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Second, the plaintiffs claim that Mr. Wright's expert testimony should not have been admitted because his conclusions concerning the cause of the accident were reached during an examination which occurred after the discovery cut-off date listed in the pre-trial order.
The plaintiffs first claim that Mr. Wright's testimony was inadmissible under the standards established by Clement. However, a review of the two cases reveals that the expert testimony offered in the instant case is very different from the expert testimony offered in the Clement case. In Clement, the expert testified that a tire contained a factory defect, a conclusion based purely on the discovery of a minuscule "black particle" discovered and photographed by another examiner. That methodology was suspect because it was unprecedented. Thus, this court required the application of the Daubert factors.
In the instant case, the expert testimony was based on accident reconstruction principles which have been widely accepted by courts for many years. Mr. Wright stated in his testimony that his opinions were based on "the law of physics and engineering," which we find is "generally accepted in the scientific community." As the defendant points out, the plaintiffs failed to raise any objections to Mr. Wright's qualifications or to his methodology at trial. We find no merit to the plaintiffs' argument that Mr. Wright's testimony was improperly admitted under the Clement standards for admission of expert testimony.
The plaintiffs also claim that Mr. Wright's testimony was inadmissible because his conclusions are based on work performed after the discovery cut-off date. The pre-trial order entered in the instant case on April 19, 1991, lists July 5, 1991, as the "Deadline for exchanging of defendant's expert *441 witness list." On that day, the defendant filed an expert witness list which listed "Allen Wright or Lee Carr (Carr Engineering)" as an expert witness. At trial, Mr. Wright stated that he started performing his reconstruction in July of 1991. The plaintiffs claim that Mr. Wright should not have been allowed to testify because his testimony was based on facts and circumstances given him after the discovery cut-off date.
We find no merit to this argument. The defendant submitted its expert witness list timely and properly included Mr. Wright's name on that list. Nothing in the pre-trial order case indicates that July 5, 1991, was the cut-off date for witnesses to review and form opinions about the case. The plaintiffs do not claim that they were denied the opportunity to depose Mr. Wright prior to trial, nor do they claim any other prejudice resulting from the fact that Mr. Wright's opinions were formed after the date for the defendant to submit its expert witness list.
Coupled with this argument, the plaintiffs intimate that the defendant was given more favorable treatment concerning the admission of expert testimony than they received from the trial judge. In support of this position, the plaintiffs point to the fact that the trial court disallowed testimony and exhibits offered by the plaintiffs after the July 1, 1991, "Deadline for exchanging of plaintiff's expert witness list" and after the July 8, 1991, "Deadline for exchanging of plaintiff's witness (including rebuttal witness) and exhibit lists." Specifically, the plaintiffs complain about the trial court's refusal to accept an "Amended Witness and Exhibit List" which they attempted to file sometime in September of 1992 (the exact date is unclear on the copies in the record).
The plaintiffs claim that the trial court should have accepted its amended list filed some 14 months after the deadline established by the pre-trial order because the trial in the case was continued after the pre-trial order had been signed. However, the pre-trial order states in bold capital letters that "CUTOFF DATES WILL REMAIN IN EFFECT IN THE EVENT THE TRIAL IS CONTINUED. PARTIES MAY SEEK AND (sic) EXTENSION OF THE ABOVE CUTOFF DATES ONLY BY WAY OF A CONTRADICTORY HEARING." The plaintiffs' attorney did sign the pre-trial order.
The trial court's discretion in controlling the admission of expert testimony and in admitting expert testimony and other evidence is well-established in Louisiana jurisprudence. See Plotkin, Louisiana Civil Procedure, Commentary to La.C.C.P. art. 1551. Furthermore, the record does not indicate that the defendant was treated more favorably than the plaintiffs in this area, as the plaintiffs would have this court believe. The issues concerning the defendant's expert witness were very different from the issues concerning the plaintiffs' witnesses and exhibits. We find no abuse of the trial court's discretion in any of the matters cited by the plaintiffs in the instant case. Therefore, the plaintiffs' third assignment of error is without merit.

Mr. Bauman's negligence
By their first assignment of error, the plaintiffs claim that the jury committed manifest error in finding that the tractor-trailer driver, Mr. Bauman, was not negligent in causing the accident. Mr. and Mrs. Fowler claim that the jury should have accepted her version of the events leading up to the accident over the tractor-trailer driver's version.
The instant case involves a classic credibility-of-the-witnesses question. The parties told two very different stories, and the jury decided to accept one party's story over the other party's story, as it is required to do in such cases. The jurisprudence compels an appellate court reviewing a trial court decision in a case involving "two permissible views," such as the instant case, to affirm the trial court decision in the absence of clearly defined exceptions. See Stobart v. State, DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). This rule was described by the Louisiana Supreme Court in Rosell as follows:
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder *442 can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witnesses's story, the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportingly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
549 So.2d at 844-45 (emphasis added).
This assignment of error by the plaintiffs is coupled with the assignment concerning the issue of the admissibility of Mr. Wright's testimony to this extentthe plaintiffs claim that the jury's verdict was obviously greatly affected by Mr. Wright's expert opinion that the physical evidence indicated that the accident must have happened as described by Mr. Bauman and that it could not have happened as described by Mrs. Fowler. However, because we have found that Mr. Wright's testimony was properly admitted, the fact that Mr. Wright's testimony might have "tipped the balance" toward Mr. Bauman's story is not grounds for finding the jury verdict manifestly erroneous.
The Stobart opinion establishes the following two-part test for reversal of a fact finder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
617 So.2d at 882.
In the instant case, "a reasonable factual basis" does exist for the jury verdict and for the trial court judgment. Further, the record does not establish that the jury verdict and trial court judgment are clearly wrong. Thus, we find no merit in the plaintiffs' first assignment of error.
We note that resolution of this assignment of error is complicated by the age of the instant case. For reasons unclear from the record, the time interval between the occurrence of the accident and the trial of the case was approximately 17 years. Naturally, the passage of such a vast amount of time resulted in diminution of memory, as well as spoliation and loss of evidence, giving the result a degree of uncertainty, especially in light of the great variances in the story as told by the two parties. The prevention of such problems is the exact reason that the judicial system favors the rapid disposition of controversies, while the events leading to the controversy are still somewhat fresh in the minds of the parties. In a case like this, which is very fact specific, both the trial and the appellate review of the case are subject to many undesirable limitations. However, these circumstances make the decision of the jury, especially regarding the credibility of the witnesses, entitled to especially great weight.

Jury request for police report
By their second assignment of error, the plaintiffs claim that the trial court erred by failing to convene court following a jury request for the police report of the accident. The plaintiffs claim that just prior to the entry of the jury verdict, the jury requested the police report in the case, which had not been admitted into evidence. The plaintiffs allege that the court bailiff improperly informed the jury that the police report was not admitted into evidence and failed to present the request to the trial court.
The plaintiffs argue that this action should be considered reversible error for a couple of reasons. First, the plaintiffs point to the provisions of La.C.C.P. art. 1795 which they say absolutely require that the judge convene court following every jury request. Second, they claim that the court bailiff exceeded his authority by failing to notify the court concerning the jury's request.
Even assuming that the procedure applied by the trial court was incorrect, we find no *443 reversible error on the part of the trial court on this issue. As the defendant points out, the police report was not only not a part of the record, it could not have been a part of the record because it was inadmissible hearsay. La.C.E. art. 803(8)(b)(i) excludes investigative reports by police and other law enforcement personnel from the public records exception to the hearsay rule.
Further, La.C.C.P. art. 1795 cannot reasonably be interpreted to require the trial court to convene court every time the jury makes any request, regardless of the merit of the request, as the plaintiffs argue. La. C.C.P. art. 1795 provides as follows:
A. If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the court room.
B. After giving notice to the parties, the court may have the requested testimony read to the jury and may permit the jury to examine the requested material admitted into evidence.
Although La.C.C.P. art. 1795(A) does use the mandatory word "shall," La.C.C.P. art. 1795(B), by use of discretionary word "may," clearly gives the trial judge discretion to determine whether to provide the jury with requested items. The article obviously contemplates a jury request for testimony or evidence which is a part of the trial court record. It cannot be reasonably applied to a request for an article which has not been admitted, and in fact could not be admitted under La.C.E. art. 803(b)(i).
Finally, we decline to adopt the plaintiffs' argument based on out-of-state cases that the fact that the bailiff had any contact with the jury whatsoever should be grounds for reversal of the trial court judgment. Under the circumstances of this case, the plaintiffs were not prejudiced by bailiff's action because the jurors sought a document which they were not entitled to review. We refuse to reverse the entire jury verdict because of such a nonprejudicial technical violation on the part of a court official. Thus, we find no merit in the plaintiffs' second assignment of error.

Conclusion
Accordingly, the trial court judgment in favor of the defendant is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs in the result.
SCHOTT, Chief Judge, concurring in the result:
While I have no disagreement with the discussion about the admission of Alan Wright's testimony in the majority opinion, this issue is not properly before us and need not be discussed. Plaintiff made no objection in the trial court to the qualification of Alan Wright, so he is precluded from raising the issue for the first time on appeal.