796 So.2d 14 (2001)
Charles William MASSIE, III
v.
CENAC TOWING CO., INC., et al.
No. 00-1596.
Court of Appeal of Louisiana, Third Circuit.
April 25, 2001.
Writ Denied August 31, 2001.
*15 Patrick D. Moresi, Attorney at Law, Abbeville, LA, Counsel for Charles William Massie, III.
Michael W. McMahon, Attorney at Law, New Orleans, LA, Counsel for Cenac Towing Company, Inc., M/V Clinton Cenac, and Boston Old Colony Insurance Co.
Court composed of YELVERTON, PETERS and GREMILLION, Judges.
*16 YELVERTON, Judge.
Charles William Massie, III sued Cenac Towing Company, Inc., and its insurer, Boston Old Colony Insurance Company, for property damage which happened when a barge landed on Massie's levee. The trial court awarded $30,500 in damages to restore the levee. The Defendants appeal the amount of this judgment, contending that damages should be far less. We affirm.

FACTS
In February 1998, Massie was walking on his property in Vermillion Parish when he heard a crash and scraping sound. Going to the water's edge, Massie saw that a barge in the Intracoastal Waterway, or Canal, had hit the levee on his property adjacent to the canal. The lead barge, pushed by a tug owned by Cenac Towing Company (Cenac), had landed on the bank to make a crew change. It damaged the bank, gouging out spoil and uprooting trees and other vegetation.
Massie owned several hundred acres along the canal. According to the evidence, the Intracoastal Canal was constructed by the Corps of Engineers about a half century ago, to accommodate barge transportation, crew boat traffic, and pleasure craft. In the construction, the Corps dredged the canal and deposited the spoil on the banks where it formed levees. The levees were higher in some places than in others. Over the years, the tides, canal traffic, rain, wind, and storms combined to wash away at the levees, but the erosion was countered by vegetation and trees which grew on the levees and served to stabilize the bank. Farmers with land adjacent to the banks benefitted from these man-made levees and suffered from their deterioration. Where the levees became low or weak, flooding from the canal caused saltwater intrusion onto their farmland as well as other damage from the flooding itself.
The area that Cenac picked on this date to lay its barge up against the bank was one of the highest levees on Massie's property. Behind this levee, Massie farmed rice and crawfish. The levee rose from the waterline some eight to ten feet high. The rack of the barge scraped along the levee for several feet before it came to rest; and it took out soil and uprooted oaks, hackberry trees, wild magnolias, willows, and other vegetation, exposing bare dirt. It was this damage, measuring about fifty linear feet, for which Massie sought compensation.
The liability of Cenac and its insurer was established by summary judgment and is not an issue. The trial court, after the damages issue was tried, found that $30,500 was "required to restore the plaintiffs property as nearly as possible to the state that it was in immediately preceding the damage, and that that amount is not disproportionate to the value of the property or economically wasteful."
The restoration cost was based on the testimony of L. Gordon Perry, who was recognized by the court as an expert in oil field construction and land restoration. His experience included building levees, repairing levees, cleaning canals, and other types of dirt work.
Perry proposed three different ways to repair the damaged fifty linear feet of the levee. All three proposals, or bids, included furnishing the necessary marine transportation in addition to equipment and labor to load, transport, and place the necessary materials. The most expensive proposal utilized a steel bulkhead and two-hundred yards of limestone rip-rap. This proposal would cost a total of $68,000. The second proposal utilized two hundred tons of limestone rip-rap and a *17 fifty-by-twenty foot bank stabilization mat, at a total cost of $30,500. The third proposal was a simple placement of two hundred tons of limestone rip-rap on the damaged area which would cost $14,500. The middle bid was what the trial judge picked.
Cenac asserts four assignments of error, as follows:
1. The trial court erred in awarding damages that places the plaintiff in a superior position than he would have occupied had the property damage complained of not occurred.
2. The trial court erred in awarding restoration damages that were not reasonable in relation to some objective benchmark associated with the property or a finding of "personal reasons" as enunciated in Roman Catholic Church v. Louisiana Gas Service Company, 618 So.2d 874 (La.1993).
3. The trial court erred by awarding damages that were punitive in nature and were unsupported by the weight of the evidence.
4. The trial court erred in qualifying plaintiff's expert, L. Gordon Perry, under Louisiana Code of Evidence Art. 702.
We will now discuss each of these assignments.

1.
Cenac contends that the trial court's award places Massie in a superior position. Cenac argues that because the soil and vegetation of the spoil bank which existed immediately preceding this incident had been subject to erosion for 50 years, the rip-rap and matting would be better bank stabilization than what was there before, and Mr. Massie's property would be actually improved.
The property damage principles found in Louisiana Constitution 1974, Article I, Section 4; Louisiana Civil Code Article 2315; and Coleman v. Victor, 326 So.2d 344 (La.1976), all foster the goal of compensating a victim to the full extent of his loss and restoring him to as good a position as he held prior to the damage. Roman Catholic Church v. Louisiana Gas, 618 So.2d 874 (La.1993).
The levee that Cenac damaged separates Massie's property from the Intracoastal Canal. The levee has protected his property for over fifty years. Trees and vegetation had grown up along the bank, stabilizing it and acting as a barrier stopping the high water and salt water intrusion from entering and flooding the farmland.
There was no evidence via testimony or otherwise to contradict the three alternative repair estimates. Only one expert testified at the trial. Perry, the expert, testified that the minimum repair necessary to restore the property to its pre-collision condition was the $30,500 bid which included the rip-rap and matting. The matting was necessary because merely replacing the dirt that was taken away would not restore the property: the first rain and any wave action would cause the dirt to "slough right back off." Perry also testified that the $30,500 bid for the bank restoration would not stop erosion but "it would be the way to repair it to where it would at least not erode more than it would normally." Cenac offered no testimony or evidence to contradict this. Based on the evidence in the record, we cannot say that the $30,500 bid would put Massie in a superior position. Thus, we find no error in the trial court's determination that the $30,500 project was required to restore Massie's property as nearly as possible to the state that it was in immediately preceding the damage.

*18 2.
With respect to the measure of damages, Cenac cites Roman Catholic Church, 618 So.2d 874, and argues that the trial court erred in finding that the cost of restoration is not disproportionate to the value of the property. This case holds that,
[A]s a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm.
Roman Catholic Church, 618 So.2d at 879-80.
The Massie property is valued at $295,000, or 812.3 acres at $364 per acre. Cenac takes the position that the damage award should be no more than the fair market value of one acre, or $364. We disagree. Even though only a portion of the levee was damaged, that damage or breach of the levee, according to the testimony, would allow flooding of far more than one acre of farmland. Massie testified that the area that would flood would be that portion of the property that was used for rice and crawfish farming. Further, the breach would allow salt water intrusion.
Cenac also argues that Massie is not entitled to restoration damages in excess of property value because he has no reason personal to him for restoring the levee to its original condition. That argument is not supported by the testimony. Massie, who lives in Georgia, testified that he has a hunting lodge there that is used for deer hunting and entertainment.
We must say that the damages seem high. Massie owns at least a mile of waterfront along the Intracoastal, and we saw most of it on a video he took from his boat and introduced into evidence. From what we saw, it is hard to imagine that the retention of any fifty foot segment of the bank could be worth $30,500. However, the other evidence in the case belies the deduction we might make if we relied on the video alone. The other evidence supports the award. There is no testimonial or expert evidence that does not support it. We are required to decide this case on the evidence and the law.

3.
Cenac contends that the judgment is punitive in nature and not sustained by the evidence presented at trial. We disagree. True, there was evidence that this was not the first time that Cenac and other tug boat owners had used Massie's banks to park their barges without permission. In fact, from Massie's testimony, it can be gathered that this was a nagging problem of long-standing. The lawsuit itself may have been prompted in part by exasperation from years of suffering these trespasses, but there is nothing in the record to suggest that the trial judge was similarly motivated in assessing damages. The award has no punitive character. The award is based on expert testimony and is entirely compensatory. The award was based on the bids submitted to Massie and the evidence supported the bid chosen by the trial court. We find no merit to this argument.

*19 4.
Finally, Cenac argues that it was error for the trial court to qualify Perry as an expert. "A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous." Mistich v. Volkswagen of Germany, Inc., 95-939, p. 8 (La.1/29/96); 666 So.2d 1073, 1079, on rehearing on other grounds, 95-939 (La.11/25/96); 682 So.2d 239. Experience alone may suffice to qualify as an expert in a particular field. La.Code Evid. art. 702; Mistich, 666 So.2d 1073. In Adriatic Ins. Co. v. Holt, 617 So.2d 184 (La.App. 3 Cir.1993), this court found that the lower court did not abuse its discretion in accepting certain experts as witnesses even though testimony offered by them was not of a lofty technical or scientific nature, when the specialized knowledge offered by them assisted a trial judge in reaching his determination. Perry's past experience included doing dirt work and performing levee construction for rice and crawfish farmers, among others. He testified that he was familiar with constructing levees, using rip-rap to stabilize a bank and stop erosion, as well as matting to stop erosion. We do not find that the trial court abused its discretion in qualifying Perry as an expert in levee restoration.

CONCLUSION
Based on the foregoing, the judgment of the trial court is affirmed. Costs are assessed to Defendants, Cenac Towing Company, Inc., et al., and its insurer, Boston Old Colony Insurance Company.
AFFIRMED.