STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-791


NANCY TAYLOR

VERSUS

PROGRESSIVE SECURITY INS. CO., ET AL.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 106515-G
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.


AFFIRMED.


David W. Groner
230 W. Main Street
New Iberia, LA 70560
Telephone: (337) 364-3629
COUNSEL FOR:
    Plaintiff/Appellee - Nancy Taylor


Ian A. Macdonald
Jones Walker
P. O. Drawer 3408
Lafayette, LA 70502-3408
Telephone: (337) 262-9000
COUNSEL FOR:
    Defendants/Appellants - Progressive Security Ins. Co. and Aimee
    Lemaire

**John J. Erny, III**
**Casler, Bordelon & McGinty**
**2450 Severn Avenue - Suite 420**
**Metairie, LA 70001**
**Telephone: (504) 832-4838**
**COUNSEL FOR:**
    **Defendant/Appellee - Progressive County Mutual Insurance Company**

**THIBODEAUX, Chief Judge.**

Nancy Taylor and Aimee LeMaire were involved in a low-speed motor vehicle accident. Ms. Taylor suffered personal injuries to her neck and filed suit against Ms. LeMaire and her insurance company, Progressive. After a jury trial, the jury awarded Ms. Taylor special damages in the amount of $307,500.00, but it did not award her general damages. The trial court then granted Ms. Taylor's motion for judgment notwithstanding the verdict and awarded Ms. Taylor an additional $500,000.00 in general damages. Ms. LeMaire and Progressive appeal the jury's award, the subsequent modification by the trial court, and they claim additional errors by the trial court. For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUES**

We must decide whether:

(1)     the trial court erred when it allowed Dr. David Barczyk, a chiropractor, to testify as an expert in biomechanics as it relates to chiropractic treatment and whether it erred in allowing Dr. Barczyk to use demonstrative evidence of rear impact accidents to explain the biomechanics of a low-speed crash to the cervical spine;

(2)     the trial court erred when it refused to allow the jury to review an exhibit and erred when it stated that the exhibit was "not evidence;"

(3)     the jury erred in its award of past and future medical expenses and loss of earning capacity to Ms. Taylor;

(4)     the trial court erred in rejecting Appellants' motion for a new trial or, alternatively, judgment notwithstanding the verdict and erred when it modified the jury's general damages award; and,

(5)     the trial court erred in assessing Progressive Security Insurance Company with all court costs.

II.

**FACTS AND PROCEDURAL HISTORY**

On December 21, 2004, Ms. LeMaire rear-ended Ms. Taylor in a low-speed motor vehicle accident on Louisiana Hwy. 182 in Iberia Parish. Both vehicles suffered minor damage. Immediately following the accident, Ms. Taylor reported that she did not need medical attention. Prior to the completion of the investigation, however, Ms. Taylor noticed soreness in her neck. That soreness continued, and she treated the injury with over-the-counter medication. Six days after the accident, Ms. Taylor's pain increased to such a degree that she visited the emergency room at Dauterive Hospital for treatment of pain and muscle spasms in her neck. Following a visit with her primary care physician, Dr. Andrew Clarke, Ms. Taylor sought treatment through physical therapy. When physical therapy did not resolve the pain or neck spasms, Ms. Taylor sought treatment from Dr. David Barczyk, a chiropractor. Dr. Barczyk treated Ms. Taylor and later referred her to Dr. John Cobb, an orthopaedic surgeon. Dr. Cobb recommended surgery for relief of her constant neck pain and muscle spasms. Dr. Illyas Munshi, a neurosurgeon, confirmed Dr. Cobb's diagnosis. In total, Ms. Taylor has been seen over 200 times by a variety of medical care providers and has endured a myriad of medical tests. She has spent thousands of dollars on pain medications and other medications prescribed by her doctors.

Ms. Taylor filed suit against Ms. LeMaire and Progressive for personal injuries sustained as a result of the accident.[1] A jury trial was held on the issue of damages, as it was previously determined that Ms. LeMaire was 100% at fault in causing the accident. Following testimony, the jury returned a verdict in Ms. Taylor's

---

[1] Ms. Taylor originally filed suit against both Progressive and Progressive County Mutual Insurance Company as her own underinsured motorist carrier. During the pendency of this appeal, Ms. Taylor dismissed her claims against Progressive County Mutual Insurance Company.

favor and awarded special damages for past medical expenses ($65,000.00), future medical expenses ($180,000.00), loss of past earning capacity ($35,000.00), and loss of future earning capacity ($27,500.00). The jury did not award Ms. Taylor general damages.

Ms. Taylor filed a motion for judgment notwithstanding the verdict, and Ms. LeMaire and Progressive filed a motion for new trial and, in the alternative, a motion for judgment notwithstanding the verdict. The trial court granted Ms. Taylor's motion and awarded Ms. Taylor general damages totaling $500,000.00.

Due to the offer of judgment Ms. Taylor made to Progressive and Ms. LeMaire prior to trial, Ms. Taylor filed a motion to tax costs which the trial court granted, assessing all of Ms. Taylor's expert, trial, and court costs to Progressive.

Ms. LeMaire and Progressive appeal the judgment of the trial court. For the following reasons, we affirm the trial court's judgment.

III.

**LAW AND DISCUSSION**

**Standard of Review**

This case poses mixed questions of law and fact. It poses questions of law as it involves the interpretation of codal articles. Thus, the appropriate standard of review regarding interpretation of codal articles is de novo.

> [A]ppellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court.

*Domingue v. Bodin*, 08-62, p. 2 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (citations omitted).

3

Moreover, under the de novo standard of review, the appellate court gives no additional weight to the trial court but, instead, conducts a de novo review and renders judgment on the record. *Id.* Accordingly, we will review the record in its entirety to determine whether the trial court's decision was legally correct.

As to questions of fact, we review the trial court's judgment for manifest error.

> [A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted).

## Expert Testimony

Ms. LeMaire and Progressive argue that the trial court erred in admitting the testimony of Ms. Taylor's witness, Dr. David Barczyk, a chiropractor. They argue that Dr. Barczyk was not properly qualified as an expert and that his opinions were not based on "demonstrated and acceptable scientific principles." Moreover, they allege that the trial court's error in allowing Dr. Barczyk to testify regarding the biomechanics of low-speed crashes was compounded by its decision to allow him to use demonstrative aids regarding other crashes. With these arguments, Ms. LeMaire and Progressive assert that the trial court failed to adhere to the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1983) and *State v. Foret*, 628 So.2d 1116 (La.1993) gate-keeping function. In connection with their assertion that the trial court improperly allowed Dr. Barczyk to testify, Ms. LeMaire and Progressive urge that the probative value of his testimony was substantially outweighed by its unfair prejudicial effect. Ms. Taylor asserts that the trial court's

4

admission of Dr. Barczyk's testimony as an expert was proper under *Daubert/Foret* and La.Code Evid. arts. 702, regarding expert testimony, and 403, regarding exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.

The trial court allowed Dr. Barczyk to testify as an expert in biomechanics as it relates to chiropractic treatment. The trial court also allowed Dr. Barczyk to use demonstrative evidence of rear-end impact tests. The starting point for analyzing the trial court's actions is La.Code Evid. art. 702 which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Comment (d) to Article 702 states that the trial judge should have broad discretion in determining whether expert testimony should be admissible and who should be permitted to testify as an expert. Moreover, well-established case law supports the trial court's great discretion in determining *who* should be allowed to testify as an expert, and the trial court's decision should not be reversed on appeal absent clear error. *Cleland v. City of Lake Charles*, 01-1463, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writs denied*, 03-1380, 03-1385 (La. 9/19/03), 853 So.2d 844, 845; *Mistich v. Volkswagon of Germany, Inc.*, 95-939 (La. 1/29/96), 666 So.2d 1073, *on rehearing on other grounds*, 95-939 (La. 11/25/96), 682 So.2d 239; *Massie v. Cenac Towing Co., Inc.*, 00-1596 (La.App. 3 Cir. 4/25/01), 796 So.2d 14, *writ denied*, 01-1511 (La. 8/31/01), 795 So.2d 1213. Manifest error is found only when the trial court was clearly wrong in accepting the expert's opinion upon which it relied. Under *Daubert*, trial courts are required to perform a gate-keeping function by deciding whether the expert's evidence or testimony is both reliable and relevant. *Daubert*, 509 U.S. at 588, 113 S.Ct. at 2794.

5

To fulfill its gate-keeping function with respect to admitting expert testimony, the trial court should consider the following non-exclusive factors: (1) whether a theory or technique "can be (and has been tested);" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known [or] potential rate of error" in using a particular scientific technique "and the existence and maintenance of standards controlling the technique's operation;" (4) whether the theory or technique has been generally accepted in the particular scientific field. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. at 2797. The *Daubert* court commented on the non-exclusivity of these factors by stating: "Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." *Id.* at 593, 2797. "Thus, the 'general observations' listed in *Daubert* are not a list of requirements that must be met in each instance of proposed expert testimony or even a list of facts that are necessarily applicable to all types of expert testimony." *Cleland*, 840 So.2d at 695 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999)).

Here, LeMaire and Progressive challenge Dr. Barczyk's qualifications, the fact that he conducted no independent investigation of Ms. Taylor's motor vehicle accident, and the demonstrative evidence he presented at trial. Dr. Barczyk testified that he is a state-licensed chiropractor and has extensive post-graduate training in the diagnosis and treatment of whiplash and spinal trauma and post-graduate training in neurology. He also has over four years of training involving car crashes to study the biomechanics of a person's body as they are subjected to these crashes. Dr. Barczyk testified that as a chiropractor, he is knowledgeable in understanding the biomechanics of the spine and that the Spine Research Institute of San Diego in conjunction with the Texas A&M University biomechanics department conducted the

crash courses that he attended. Dr. Barczyk testified previously in court in Louisiana as an expert in the field of biomechanics specific to rear-end crashes. Neither Ms. LeMaire nor Progressive offered an expert to refute Dr. Barczyk's testimony nor did they submit a *Daubert* motion prior to trial, leading this court to doubt their objection to Dr. Barczyk as an expert witness.

The fact that Dr. Barczyk did not perform an independent investigation of Ms. Taylor's motor vehicle accident goes to the weight and credibility of his testimony, not its admissibility, "and it is up to the opposing party to examine the factual basis of the opinion in cross-examination." *Square v. LeBlanc*, 04-1500, p. 7 (La.App. 3 Cir. 6/1/05), 903 So.2d 1178, 1183, *writ denied*, 05-1746 (La. 1/13/06), 920 So.2d 240 (quoting *Rowe v. State Farm Mut. Auto. Ins.*, 95-669, p. 17 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611).

Finally, Dr. Barczyk's use of demonstrative evidence was not overly prejudicial. The videos and demonstrative evidence helped the jury to understand the mechanics of rear-end collisions and the human neck. The jury knew that the videos were not actual videos of Ms. Taylor's motor vehicle accident, but instead were a learning tool to explain biomechanics. Similarly, the powerpoint presentation and anatomical model used by Dr. Barczyk assisted the jury in evaluating the spectrum of rear-impact crashes. The jury was able to make a value judgment as to the weight of the testimony, and it acted accordingly.

For these reasons, we find that the trial court properly performed its gate-keeping function in finding that Dr. Barczyk's testimony and accompanying evidence were both reliable and relevant. Thus, the trial court properly admitted Dr. Barczyk as an expert in the field of biomechanics of low-speed crashes and properly allowed him to use relevant demonstrative evidence in presenting his testimony.

7

## Jury Request for Exhibit Number 7

Ms. LeMaire and Progressive claim that the trial court erred by failing to allow the jury to view "Exhibit Number 7," an old petition from a separate personal injury case where Ms. Taylor averred that she had injured her neck prior to the motor vehicle accident at issue. Ms. LeMaire and Progressive also claim that the trial court erred by commenting on the evidence.

Appellants argue that these actions should be considered reversible error for a couple of reasons. First, they point to the provisions of La.Code Civ.P. art. 1795 which they claim requires the trial judge to give the jurors any piece of evidence the jurors request. Second, they assert that the court's statement that the petition was "not evidence" effectually indicated to the jury that Ms. Taylor was a credible witness.

Louisiana Code of Civil Procedure Article 1795 provides:

A. If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom.

B. After giving notice to the parties, the court may have the requested testimony read to the jury and may permit the jury to examine the requested material admitted into evidence.

The Louisiana Fourth Circuit Court of Appeal considered a similar issue in *Fowler v. Bauman*, 95-145 (La.App. 4 Cir. 10/12/95), 663 So.2d 438. In determining that the trial court has discretion as to the items it provides to the jury, that court stated: "Although La.C.C.P. art. 1795(A) does use the mandatory word 'shall,' La.C.C.P. art 1795(B), by use of the word 'may,' clearly gives the trial judge discretion to determine whether to provide the jury with requested items." *Id.* at 443. We agree with the fourth circuit's analysis of this issue and find that the trial court did not err in refusing to provide the jury with the requested exhibit.

8

Moreover, we decline to adopt Appellants' argument that the trial court's statement that the exhibit was "not evidence" somehow prejudiced Appellants by lending credence to the veracity of Ms. Taylor's testimony. The jury had ample opportunity to form its own opinion of Ms. Taylor. The jury heard Ms. Taylor testify about the accident, they heard Appellants' cross-examination, and they heard Ms. Taylor testify about Exhibit Number 7. The jury evaluated the testimony and reached a verdict in favor of Ms. Taylor.

In sum, we find no reversible error on the part of the trial court on this issue.

**Damages**

Appellants argue that the jury erred in its award of past and future medical expenses and loss of earning capacity to Ms. Taylor. It is well-settled that a judge or a jury is given great discretion in its assessment of the amount of both general and special damages. Louisiana Civil Code art. 2324.1 provides: "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." The appropriate amount of damages is a determination of fact and is entitled to great deference on review. *Guillory v. Lee*, 09-75 (La. 6/26/09), 16 So.3d 1104. "Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. *Id.* at 1117 (citations omitted).

*(1) Special Damages (Past and Future Medical Expenses)*

The Louisiana Supreme Court articulated the definition and standard of review for an award of special damages as follows:

> Special damages are those which have a 'ready market value,' such that the amount of damages

theoretically may be determined with relative certainty, including medical expenses and lost wages. An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong.

*Guillory*, 16 So.3d at 1118 (citations omitted).

Ms. Taylor introduced past medical expenses totaling $64,966.85. Ms. Taylor incurred these expenses over a four-year period with numerous doctor visits, tests, treatments, injections, and medications. Notably, however, Ms. Taylor had not yet undergone surgery, as recommended by her orthopaedic surgeon, Dr. John Cobb. Specifically, Dr. Cobb recommended a three-level fusion, and he testified that it was possible that Ms. Taylor would require a second surgery. Glenn Hebert, a licensed rehabilitation counselor, testified that one surgery would cost $87,120.00. Moreover, Dr. Barczyk testified that he would continue to offer chiropractic therapy to manage Ms. Taylor's pain, and Doctors Duhe and Martin, Ms. Taylor's counselor and pain management doctor, respectively, both testified that they would continue treating Ms. Taylor. Dr. Womack, an economist, testified that Ms. Taylor could expect to live another fifty years.

The jury awarded Ms. Taylor $65,000.00 for past medical expenses. Appellants argue that the jury erred because it awarded Ms. Taylor an additional $33.15 she is not entitled to receive. Appellants' argument is frivolous and without merit. As mentioned previously, special damages may be determined with *relative* certainty, not *absolute* certainty. Thus, it was within reason and within the jury's discretion to award Ms. Taylor $65,000.00 in past medical expenses.

The jury also awarded Ms. Taylor $180,000.00 in future medical expenses. Again, Appellants assert that Ms. Taylor received more than she deserved.

Again, they are mistaken. The evidence in the record demonstrates that Ms. Taylor has incurred almost $65,000.00 in medical expenses in a four-year period, without yet having an expensive neck surgery recommended by her physician. Ms. Taylor's future expenses (including a possibility of two costly surgeries and a multitude of additional treatments) were established with some degree of certainty. Thus, the jury did not err in awarding Ms. Taylor $180,000.00 for future medical expenses, and we will not disturb that award.

*(2) Loss of Earning Capacity*

Appellants argue that the jury erred in awarding Ms. Taylor damages for past and future loss of earning capacity. We disagree. In *Bennet v. City of New Iberia*, 08-1369, pp. 11-12 (La.App. 3 Cir. 4/1/09), 7 So.3d 822, 830 (quoting *Batiste v. New Hampshire Ins. Co.*, 94-1467, pp. 3-4 (La.App. 3 Cir. 5/3/95), 657 So.2d 168, 170, *writ denied*, 95-1413 (La. 9/22/95), 660 So.2d 472 (citations omitted)), we stated:

> Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity.
>
> In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition.

11

The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident.

On appeal, an award of damages for loss of earning capacity is reviewed for manifest error. *Id.* Mr. Hebert testified that Ms. Taylor experienced a loss of earning capacity of $6,000.00 to $7,000.00 per year. Specifically, Mr. Hebert testified that because of Ms. Taylor's disability, she would be at a disadvantage in the workplace compared to other, non-injured workers, and therefore, would sustain a loss of earning capacity. Dr. Womack, the economist, estimated Ms. Taylor's loss of earning capacity at $140,383.00, plus past and future loss of household services of $91,388.00. Moreover, Karen Keller, Appellants' vocational rehabilitation expert, testified that but for the accident, Ms. Taylor would likely have been able to secure a teaching job at the college level earning $50,000.00 per year. Given the evidence presented at trial, we find no error in the jury's award for past and future loss of earning capacity.

### JNOV and Modification of the General Damages Award

Ms. LeMaire and Progressive assert that the trial court erred by rejecting their motion for a new trial or, alternatively, judgment notwithstanding the verdict. While rejecting Appellants' motion, the trial court simultaneously granted Ms. Taylor's motion for judgment notwithstanding the verdict and subsequently increased the jury's award of general damages from nothing to $500,000.00. Appellants argue that the trial court's actions effectually abrogated their right to a jury trial.

We must first review the trial court's actions in granting Ms. Taylor's motion for JNOV and rejecting Appellants' motion. The supreme court set out the criteria for the reviewing court's evaluation of the trial court's grant or rejection of a JNOV in *Joseph v. Broussard Rice Mill, Inc.*, 00-628, pp. 4-5 (La. 10/30/00), 772 So.2d 94, 99.

> LA.CODE CIV.PROC. art. 1811 controls the use of JNOV. Although the article does not specify the grounds on which a trial judge may grant a JNOV, in *Scott v. Hospital Serv. Dist. No. 1,* 496 So.2d 270 (La.1986), we set forth the criteria used in determining when a JNOV is proper. As enunciated in *Scott*, a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Scott*, 496 So.2d at 274. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.,* 583 So.2d 829, 832 (La.1991). This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." *Scott*, 496 So.2d at 273; *Jinks v. Wright*, 520 So.2d 792, 794 (La.App. 3 Cir. 1987).

The appellate court must determine if the trial court erred in granting or denying the JNOV "by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict?" *Id*. If the answer to that question is in the affirmative, then the motion should have been granted. If not, it should be rejected. *Id.*

The evidence presented at trial pointed overwhelmingly in favor of Ms. Taylor. Before trial, it was determined that Ms. LeMaire was at fault in the accident, so the issues at trial were limited to Ms. Taylor's injuries. Ms. Taylor's injuries are profound. Her lifestyle has been permanently altered as a result of the injuries to her neck. At only twenty-eight years of age, she faces a lifetime of pain and medical treatments to relieve that pain. We find that reasonable persons could not have arrived at a verdict that would give Ms. Taylor anything less than all relief possible—including general damages. Thus, we affirm the trial court's rejection of Appellants' motion for JNOV and its grant of Ms. Taylor's motion for JNOV.

Moreover, we reject Appellants' argument that the trial court abrogated their right to a jury trial. A JNOV corrects an erroneous jury verdict. Consequently, it enhances the legitimacy of the jury system. Thus, the very nature of the grant or rejection of a JNOV assists, rather than hinders, the jury process.

Ms. LeMaire and Progressive also assert that the award of general damages is excessive. "We review the trial court's award of damages pursuant to the JNOV using the manifest error standard of review." *Boxie v. LeMoine*, 07-905, p. 16 (La.App. 3 Cir. 7/16/08), 988 So.2d 309, 320, *writ denied*, 08-2014, 08-2019 (La. 11/10/08), 996 So.2d 1071.

The award of general damages is broken down into past, present, and future pain and suffering ($250,000.00), mental anguish ($125,000.00), and loss of enjoyment of life ($125,000.00). A review of the award finds that it is not unreasonable. The evidence presented indicates that Ms. Taylor has been to over 200 appointments with health care providers since the injury. She remains in pain, and it is likely that pain will continue for the rest of her life. She treats the pain with medication continuously, and she undergoes therapy for depression related to the

constant pain and loss of enjoyment of life. Ms. Taylor, though a young woman, can no longer enjoy the lifestyle she enjoyed prior to the accident. Accordingly, we find that the trial court did not manifestly err in awarding Ms. Taylor $500,000.00 in general damages.

**Costs**

Finally, Ms. LeMaire and Progressive assert that the trial court erred in assessing Progressive Security Insurance Company with all court costs, including costs to present at trial. Specifically, they argue that the trial court's action constitutes an unauthorized amendment of the judgment. Appellants' argument is misplaced.

The trial court did not amend the original judgment which assessed *court costs*[2] jointly to Progressive and Progressive County Mutual Insurance Company. Instead, the trial court ruled on a Motion to Tax Costs and properly assessed those costs in a separate judgment. In that motion, pursuant to an offer of judgment, Ms. Taylor requested that the court tax the costs of the experts, exhibits, and jury books against Progressive. The court correctly assessed those costs against Progressive since Ms. Taylor forwarded an offer of judgment to Progressive with no response. Thus, the trial court did not err in assessing Progressive with all costs, including costs to present at trial.

IV.

**CONCLUSION**

---

[2]Court costs are those costs assessed by the Clerk of Court. Court costs differ from costs to present at trial, which include expert witness fees, deposition fees, and expenses of expert witnesses, among other items.

15

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against Appellants, Progressive Security Insurance Company and Aimee LeMaire.

**AFFIRMED.**