STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-635

TANGELA ANNETTE BROWN, ET AL.

VERSUS

GEORGIA GULF LAKE CHARLES, LLC

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-5068
HONORABLE CLAYTON DAVIS, JUDGE

************

J. DAVID PAINTER
JUDGE

************

Court composed of Jimmie C. Peters, J. David Painter, James T. Genovese, Judges.

AFFIRMED

Louis C. LaCour, Jr.
Raymond P. Ward
701 Poydras St., Ste. 4500
New Orleans, LA 70139
Counsel for Defendant-Appellant:
    Georgia Gulf Lake Charles, LLC

Ernest P. Geiger, Jr.
John E. W. Baay, II
William A. Barousse
701 Poydras St., Ste. 4800
New Orleans, LA 70139
Counsel for Defendant-Appellant:
    Georgia Gulf Lake Charles, LLC

Wells T. Watson
P.O. Drawer 7820
Lake Charles, LA 70605
Counsel for Plaintiffs-Appellees:
    Tangela Annette Brown, et al.

**PAINTER, Judge**

Defendant, Georgia Gulf Lake Charles, LLC (GGLC) appeals the judgment of the trial court finding that Defendant was liable for Plaintiffs' chemical exposures, that the exposures were sufficient to cause Plaintiffs' symptoms, and awarding damages. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On September 17, 2006, an explosion and fire occurred at GGLC's Westlake facility, as a result of which hazardous chemicals were released. Plaintiffs, Patrick Mouton, Norma Miles, John Miller, Donald and Dora Pryor, Ashley Fuselier, Casey Budge, Kimberly Lambert, and Cecelia Collins, filed suit against GGLC alleging injuries resulting from the chemical exposure. GGLC stipulated to fault for the chemical release, and the trial was limited to the questions of whether the release caused Plaintiffs' symptoms and the appropriate amount of damages. The trial court found Defendant liable for Plaintiffs' injuries and awarded special and general damages. Defendants appeal the trial court's ruling with regard to causation and its decision to exclude the testimony of one of its expert witnesses. Plaintiffs answered the appeal asking for additional damages but dismissed their answer.

## DISCUSSION

*Exclusion of Expert Testimony*

We first consider Defendant's assertion that the trial court erred in excluding the testimony of its expert witness, Dr. Scott Phillips.

During traversal of Dr. Phillips's qualifications by counsel for Plaintiffs, Dr. Phillips read from his report with regard to what he was asked to do concerning the case, as follows:

1

I've been asked if on a scientific basis from the information provided thus far it can be stated to a reasonable degree of medical and scientific certainty that the alleged exposure to vinyl chloride, ethylene dichloride, hydrogen chloride, ethylene, hydrogen sulfide, and other chemicals from the Gulf - - Georgia Gulf Lake Charles Facility's fire caused or contributed to the alleged injuries.

Based on this statement in Dr. Phillips' report, counsel for Plaintiffs objected to the acceptance of Dr. Phillips as an expert and to his testimony as such. Although counsel for Defendant argued that this could be addressed on cross examination or that Dr. Phillips could be questioned with regard to what his opinion was based on the proper standard, it is important to note that the objection was not to the factual basis of Dr. Phillips' opinion, which could be addressed on cross-examination. *Cox v. Shelter Ins. Co.*, 09-958 (La.App. 3 Cir. 4/7/10), 34 So.3d 398, *writ denied*, 10-1041 (La. 9/17/10), 45 So.3d 1044. Nor is it an objection to the scientific basis or reliability of the opinion, which would be appropriately addressed in a *Daubert* motion. Rather, Plaintiffs assert that because Dr. Phillips used an inappropriate standard in reaching his conclusion, i.e. scientific certainty, his opinions were irrelevant to the case before the court. The trial court sustained the objection, stating that it did not feel that the expert could change the standard used "on the fly." The trial court further stated that, contrary to the argument by counsel for Defendant, this is not simply a matter of semantics such that substituting the word probability for certainty would effect no change in the outcome. "[I]f I decided this case on reasonable degree of medical and scientific certainty, that would change the result." The trial court excluded the testimony, stating that: "[Dr. Phillips has] prepared an extensive report, he's done a lot of work, but he's based it on a standard that's not relevant to the case."

The starting point for analyzing the trial court's actions is La.Code Evid. art. 702 which states:

2

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> Comment (d) to Article 702 states that the trial judge should have broad discretion in determining whether expert testimony should be admissible and who should be permitted to testify as an expert. Moreover, well-established case law supports the trial court's great discretion in determining who should be allowed to testify as an expert, and the trial court's decision should not be reversed on appeal absent clear error. *Cleland v. City of Lake Charles*, 01-1463, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writs denied*, 03-1380, 03-1385 (La.9/19/03), 853 So.2d 644, 645; *Mistich v. Volkswagon of Germany, Inc.*, 95-939 (La.1/29/96), 666 So.2d 1073, *on rehearing on other grounds*, 95-939 (La.11/25/96), 682 So.2d 239; *Massie v. Cenac Towing Co., Inc.*, 00-1596 (La.App. 3 Cir. 4/25/01), 796 So.2d 14, *writ denied*, 01-1511 (La.8/31/01), 795 So.2d 1213.

*Taylor v. Progressive Sec. Ins. Co.*, 09-791, p. 5 (La.App. 3 Cir. 4/7/10), 33 So.3d 1081, *writ denied*, 10-1024 (La. 9/17/10), 45 So.3d 1044.

Our review convinces us that the trial court did not abuse its discretion in excluding the testimony of Dr. Phillips based on relevancy.

*Causation*

Defendant asserts that the trial court erred in finding that Plaintiffs demonstrated a causal link between the chemical release and their injuries.

> A cause is a legal cause in fact if it has a proximate relation to the harm which occurs. *Butler v. Baber*, 529 So.2d 374 (La.1988). "A proximate cause is generally defined as any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred." *Sutton v. Duplessis*, 584 So.2d 362, 365 (La.App. 4 Cir.1991). If there is more than one cause of injury, "a defendant's conduct is a cause-in-fact if it is a substantial factor generating plaintiff's harm." *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169, p. 31 (La.5/22/09), 16 So.3d 1065, 1088. Causation is an issue of fact subject to the manifest error standard of review. *Id.*

*Hutto v. McNeil-PPC, Inc.,* 11-609, pp. 17-18 (La.App. 3 Cir. 12/7/11), 79 So.3d 1199, 1213, *writ denied*, 12-402 (La. 4/27/12), 86 So.3d 628, *cert. denied*, ___ U.S. ___, ___ S.Ct. ___ (2012).

The trial court's factual findings may not be reversed unless there is no reasonable basis for the finding in the record and the finding is manifestly erroneous.

> "Factual determinations of the trier of fact may not be reversed absent manifest error or unless they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880, 882 (La.1993). The appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently. *Ambrose v. New Orleans Police Department Ambulance Service*, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221."

*Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 p. 11 (La.4/3/02), 816 So.2d 270, 278-279.

*Green v. K-Mart Corp.,* 03-2495, pp. 3-4 (La. 5/25/04), 874 So.2d 838, 841-42.

The trial court gave oral reasons for its finding of causation as follows:

> I find that the plaintiffs satisfied the burden of proof by a preponderance of the evidence through the eyewitnesses of the -- dozen or so eyewitnesses who testified that they were exposed by smell, taste, visual, and because of, in some cases, the immediate effects reactions to their exposures supports the finding of an exposure to these plaintiffs.
>
> I find that the release exceeded Georgia Gulf's estimate in both the volume released and the duration. The evidence was compelling that the release of chemicals began before the fire started and continued beyond the time the fire was extinguished. The estimate was low, because the release began earlier than they were willing to admit and continued later, but also because the -- we had that issue of the -- I think it was the ESC feed line that could be shut down and that issue was presented in kind of a vague way at first through Butterworth's testimony and sought to be clarified by Dr. Murphy or

4

Haussmann -- I think it was Haussmann but even then, when we finally got to the point that the -- this was a system shutdown that had to be initiated by operators, and we really didn't have any record of -- didn't have any record of when that system was shut down. We simply had information relayed to the expert that it was -- there was immediate isolation but nothing to support that. And I would have to believe that in a facility like this, you have documents, such as the monitoring data, that would tell you what was happening on a line such as this. So the release exceeded the estimate.

The release, even based on the numbers admitted to by Georgia Gulf was enormous. We're talking about 43,000 pounds of HCL [] versus an exposure to people that are calculated in parts per million so it's not hard to -- you know, unless I want to simply reject out of hand the dozen or so eyewitnesses who testified about the exposure and accept experts, primarily Dr. Murphy who presented a super, which may well have dealt with a large amount of the release -- I mean, it may well have modeled the -- the direction of a good bit of the release but not a hundred percent. And this was a toxic mix of chemicals. That's undisputed. The mix is more potent than any individual chemical. I don't believe that was even disputed. But, obviously, the model had problems, because there were specific readings in the DEQ monitor and the 4.2 ppm at the ferry that were known and not really picked up in the model.

Dr. Murphy's explanation for the high reading at the ferry was because it was in a depression, which I don't really understand. We don't have depressions around here. So the model, as he described, is useful at times. It probably dealt with the direction and movement of a large bit of the release but not all of it. The turbulence created by the fire and I watched the video -- dispersed the chemicals in all directions, and that's proven again by the onsite monitoring locations which picked up chemicals in all directions. And then there were -- we also had the Moss Bluff cloud that was called in that tells you that chemical went to that northeast direction.

I accept the testimony of the plaintiffs' experts as to the amounts, but all of that is imprecise to some degree, because, again, you have a mix, but you can't deny the exposure because of what eyewitnesses testified to.

The shelter-in-place argument that Georgia Gulf knew there were going to be certain concentrations to justify the shelter in place is not an argument that I accept, because otherwise, you'd put a chilling effect on facilities in calling a shelter in place. They didn't know what concentrations, and they had to err on the side of caution; so that argument, I reject. They did what they felt like they had to do under the circumstances, and they called the shelter in place.

That does not mean that certain concentrations then appeared everywhere. You just can't -- that's not persuasive. That's not the

evidence. But, clearly, there were sufficient concentrations to cause effects on people in the community. And that's the finding of the Court.

Each of the plaintiffs testified as to effects and symptoms that they had after the exposure, which they did not have previously or which exacerbated pre-existing conditions. Plaintiffs' expert physicians, including Doctors Robert Looney, Gerald Mouton, and Barry Levy, each testified as to their opinion that the GGLC fire and chemical release more probably than not was the cause of the symptoms and duration of symptoms that Plaintiffs suffered. Further, as the court stated in *Rosell* 549 So.2d at 844-45 (La.1989):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
>
> Given the record herein and the reasonable credibility evaluations made by

the trial court, we conclude that the determination that the fire and chemical release caused the symptoms suffered by Plaintiffs is reasonable. Further, the determination is not clearly wrong or manifestly erroneous. As a result, we may not overturn the trial court's determination that Plaintiffs carried their burden of showing a causal link between the release of chemicals and the injuries they incurred.

**CONCLUSION**

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendant, Georgia Gulf Lake Charles.

**AFFIRMED.**