# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 20-299

SHAWN COPELL

VERSUS

ARCENEAUX FORD, INC., ET AL.

**\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 128759
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\***

### SYLVIA R. COOKS
### JUDGE
**\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Charles G. Fitzgerald, Judges.

**AMENDED IN PART AND, AS AMENDED, AFFIRMED; REVERSED IN PART AND RENDERED.**

Robert M. Brandt
Charles Brandt
Kyle Sherman
Kenny M. Habetz, Jr.
111 Mercury Street
Lafayette, LA  70503
(337) 800-4000
COUNSEL FOR PLAINTIFF/APPELLANT:
     Shawn Copell

Lance Williams
McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch
195 Greenbrier Blvd., Suite 200
Covington, LA 70433
(504) 831-0946
COUNSEL FOR DEFENDANTS/APPELLEES:
     Arceneaux Ford, Inc, et al.

**COOKS, Chief Judge.**

This appeal arose from a jury verdict on a claim for personal injuries suffered by Plaintiff, Shawn Copell, through the negligence of Defendant, Arceneaux Ford.

## FACTS AND PROCEDURAL HISTORY

On September 4, 2015, Plaintiff, Shawn Copell, brought his Ford F-150 truck to Arceneaux Ford for an oil change and tire rotation. After the services were completed, Mr. Copell left with his truck. He then drove approximately three miles, when he began to notice the truck "bucking" and "swaying." Mr. Copell then attempted to pull off the road into a private drive when the truck came to a sudden stop. Mr. Copell stated he was suddenly and severely jarred forward when the vehicle abruptly stopped. It was acknowledged by Arceneaux Ford that the service technician failed to tighten the lug nuts on the driver's side rear tire, which caused the tire to dislodge from Mr. Copell's truck.

Mr. Copell immediately called Arceneaux Ford, which towed the truck back to the dealership along with Mr. Copell. He was provided a rental car by the dealership and told his truck would be repaired. He acknowledged he did go back to work that day, but after feeling discomfort in his neck and experiencing a severe headache, his supervisor sent him home. According to Mr. Copell and his wife, Brandi, his symptoms worsened through the course of the night and he sought medical attention the following day. Since it was a Saturday, Mr. Copell went to the Urgent Care clinic, where x-rays were taken and he was given two injections for pain and spasms.

After continuing to experience pain over the next few days, Mr. Copell began treating with Dr. Sai Chennamsetty, a general practitioner. After months of conservative treatment with no significant improvement, Dr. Chennamsetty ordered

2

a MRI. After reviewing the results, he was referred to Dr. William Brennan, a neurosurgeon.

Dr. Brennan informed Mr. Copell he was suffering from a disc bulge with narrowing of the neural foramen at the C5-6 level. After two courses of physical therapy, home exercises and use of a traction kit failed to provide significant relief, Dr. Brennan advised Mr. Copell surgery was his only viable option. On November 16, 2016, Mr. Copell underwent an anterior cervical discectomy and fusion surgery at the C5-6 level.

Prior to the surgery, on August 4, 2016, Mr. Copell filed a Petition for Damages against Defendants, Arceneaux Ford, and its liability insurer, Amtrust North America, Inc., seeking "fair and just compensation from the Defendants in a reasonable amount that will satisfy Petitioner's demands for all damages."

Following the November 16, 2016, surgical procedure, Defendants requested an independent medical examiner, Dr. Henry Eiserloh, examine Mr. Copell and review all his medical records. Dr. Eiserloh testified he saw no neurological defects in Mr. Copell's neck and questioned the necessity of the surgical procedure. Dr. Brennan countered that, in his opinion, the surgery was mandated because there was disc material from a herniated disc that was extending into the foramen and hitting a nerve, causing significant pain to Mr. Copell. Dr. Eiserloh also questioned the choice to perform an anterior cervical discectomy, opining that an artificial cervical replacement surgery was a better option and would have significantly lessened the likelihood of a second surgery. Dr. Eiserloh did agree with Dr. Brennan that a second surgery would likely be required in the future.

On September 23, 2019, the matter proceeded to trial before a jury. Both sides presented expert testimony as to the likelihood the incident caused Mr. Copell's injuries, as well as expert medical testimony as to the degree and severity of the

injuries. Mr. Copell requested the trial court instruct the jury on the presumption of causation set forth in *Housley v. Cerise*, 579 So.2d 973 (La.1991). Defendants objected to the inclusion of the *Housley* presumption. The trial court overruled Defendants' objection. After a several day trial, the jury returned a verdict awarding Mr. Copell $16,000.00 in general damages, $104,000.00 in past medical expenses and $95,000.00 in future medical expenses. Mr. Copell appeals the jury verdict, asserting the following assignments of error:

1. The jury's award of $16,000.00 for past and future pain and suffering is abusively low.

2. The jury erred in failing to award Mr. Copell mental pain and suffering past and future.

3. The jury erred in not awarding Mr. Copell loss of enjoyment of life and disability and loss of function.

4. The jury erred in failing to award all future medical expenses.

Defendants answered Mr. Copell's appeal, and asserted the following assignments of error:

1. The trial court erred in denying Defendants' motion in limine and overruling Defendants' objection at trial to the testimony of Dr. Barczyk, Mr. Copell's expert.

2. The trial court erred in overruling Defendants' objection to Mr. Copell's requested jury charge on the *Housley* presumption.

3. The jury erred in awarding Mr. Copell general and special damages based on the *Housley* presumption for this very minor incident, which could not have caused the alleged injuries.

4. Alternatively, the jury erred in awarding $104,000.00 in past medical expenses and $95,000.00 in future medicals based on the *Housley* presumption, as the evidence does not support those awards.

## ANALYSIS

We will first examine Defendants' assignments of error, as much of the argument it puts forward also relates to Mr. Copell's arguments on appeal.

4

# I.    *Daubert Challenge.*

In its first assignment of error, Defendants argue that the trial court erred in denying its motion to exclude the testimony of Mr. Copell's witness, Dr. David Barczyk, a chiropractor. Defendants argued Dr. Barczyk was "not a qualified biomechanical engineer" and the trial court failed to adhere to the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) and *State v. Foret*, 628 So.2d 1116 (La.1993) gate-keeping function. Mr. Copell asserts that the trial court's admission of Dr. Barczyk's testimony as an expert was proper under *Daubert*/*Foret* and La.Code Evid. art. 702.

The trial court denied Defendants' motion to exclude and allowed Dr. Barczyk to testify as an expert in biomechanics as it relates to chiropractic treatment. Pertinent to this decision, La.Code Evid. art. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) The testimony is based on sufficient facts or data;
>
> (3) The testimony is the product of reliable principles and methods; and
>
> (4) The expert has reliably applied the principles and methods to the facts of the case.

The comments to article 702 and the jurisprudence establish that the trial court has great discretion in determining who should be allowed to testify as an expert, and the trial court's decision should not be reversed on appeal absent clear error. *Mistich v. Volkswagon of Germany, Inc.*, 95-939 (La. 1/29/96), 666 So.2d 1073, *on rehearing on other grounds*, 95-939 (La. 11/25/96), 682 So.2d 239; *Taylor v. Progressive Sec. Ins. Co.*, 09-791 (La.App. 3 Cir. 4/7/10), 33 So.3d 1081, *writ*

5

*denied*, 10-1024 (La. 9/17/10), 45 So.3d 1044; *Cleland v. City of Lake Charles*, 01-1463, 02-805 (La.App. 3 Cir. 3/5/03), 840 So.2d 686, *writs denied*, 03-1380, 03-1385 (La. 9/19/03), 853 So.2d 644, 645. Thus, we can only reverse the trial court's decision to accept an expert's opinion if we find that conclusion to be clearly wrong.

We find no merit in Defendants' challenge as to Dr. Barczyk's qualifications. Dr. Barczyk has been a state-licensed chiropractor for over twenty years. He served as the President of the Chiropractic Association of Louisiana and was appointed to serve on the Louisiana Board of Chiropractic Examiners. He also testified as to his extensive post-graduate training in biomechanics and occupant kinematics relating to motor vehicle trauma. He has attended crash courses conducted by the Spine Research Institute of San Diego in conjunction with the Texas A & M University biomechanics department. In 2016, Dr. Barczyk was certified from the Accreditation Commission for Traffic Accident Reconstruction (ACTAR). Mr. Copell notes that since his ACTAR qualification Dr. Barczyk has been accepted in ten trials as an expert in the field of injury biomechanics. This court in *Taylor*, 33 So.3d 1081, 1086, as in this case, was tasked with a challenge as to the trial court's decision to allow this same expert, Dr. Barczyk "to testify regarding the biomechanics of low-speed crashes." After examining Dr. Barczyk's qualifications, this court agreed that he was qualified to testify as an expert regarding biomechanics of the spine. We reach the same decision in this case.

Defendants also argued that Dr. Barczyk's opinions should be excluded because they were formulated by relying solely on the facts as testified to by Mr. Copell. As a general rule, the factual basis of an expert's opinion goes to the credibility of the testimony, not its admissibility, and it is up to the opposing party to examine the factual basis of the expert's opinion in cross-examination. La.Code Evid. art. 702; *Rowe v. State Farm Mut. Auto. Ins.*, 95-669 (La.App. 3 Cir. 3/6/96),

6

670 So.2d 718, *writ denied*, 96-824 (La. 5/17/96), 673 So.2d 611. Thus, disputes as to the factual basis of an expert's opinion go to the weight of that opinion, "and it is up to the opposing party to examine the factual basis of the opinion in cross-examination." *Square v. LeBlanc*, 04-1500, p. 7 (La.App. 3 Cir. 6/1/05), 903 So.2d 1178, 1183, *writ denied*, 05-1746 (La. 1/13/06), 920 So.2d 240.

For these reasons, we find that the trial court properly performed its *Daubert* gate-keeping function in finding that Dr. Barczyk's testimony was both reliable and relevant. Thus, the trial court properly admitted Dr. Barczyk as an expert in the field of biomechanics.

## II.    *Housley Presumption.*

In its second assignment of error, Defendants argue the trial court erred in instructing the jury on the presumption of causation set forth in *Housley*. Louisiana jurisprudence has long recognized that when a person was in good health prior to an accident, and symptoms appear after the accident, that person's injuries are presumed to have resulted from the accident. *Housley*, 579 So.2d 973; *Bernard v. Hartford Ins. Co.*, 09-71 (La.App. 3 Cir. 6/3/09), 12 So.3d 1098, *writ denied*, 09-1524 (La. 10/9/09), 18 So.3d 1285; *Stoll v. Allstate Ins. Co.*, 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089; *Munch v. Backer*, 10-1544 (La.App. 4 Cir. 3/23/11), 63 So.3d 181; *Thomas v. Comfort Ctr. of Monroe, LA, Inc.*, 10-494 (La.App. 1 Cir. 10/29/10), 48 So.3d 1228; *Edwards v. LCR-M Corp., Inc.*, 41,125 (La.App. 2 Cir. 7/12/06), 936 So.2d 233. A plaintiff is entitled to the application of the *Housley* presumption of causation if three elements are met:  1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) there is a reasonable possibility of a causal connection between the accident and the disabling condition. *Housley*, 579 So.2d 973. The application of the *Housley*

presumption of causation to the facts is a question of fact and subject to manifest error review. *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So.2d 557; *Layssard v. State, Dep't of Pub. Safety & Corrs.*, 07-78 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511.

Defendants argue the *Housley* presumption was improper here because they maintain Mr. Copell admitted to suffering from neck pain prior to the incident. Our review of the record does not support this contention. There was some testimony by Mr. Copell that on rare occasions he may have woken up and his neck was sore, but there was absolutely no testimony of any kind of persistent, prior neck trouble. This can be seen from the following colloquy which occurred when Mr. Copell was being cross-examined:

> Q. Mr. Copell, we were talking I think at the end there about you exercising.
>
> A. Yeah. I believe so. Yeah. I believe that's where we were.
>
> Q. We were talking about at some point before the break and you agreed with me. I think you said from time to time you had neck pain.
>
> A. No, not neck pain. I never said that.
>
> Q. Okay. I thought you said in your workout you would have a sore neck including neck pain.
>
> A. (No response)
>
> Q. I'll ask it again.
>
> A. Well okay. I –
>
> Q. The jury will remember what you said.
>
> A. Okay. I just truly don't remember everything. I had neck pain during work - - during.
>
> Q. Are you telling us working out for fourteen (14) years, playing soccer, you never had any pain in your neck one time ever?
>
> A. I mean I think we all wake up, you know, from - - from sleeping wrong or something, but that's everybody - -

Q. Okay.

A. - - I believe has that.

Defendants also argue Mr. Copell's long history of weightlifting since his teen years should be construed as evidence that he was in poor health. They elicited testimony from Dr. Eiserloh that strenuous weightlifting *could* cause wear and tear on the spine and advanced degeneration. Defendants point to some complaints of back pain when Mr. Copell was fourteen years old; however, there is no indication that Mr. Copell had complained of any back pain for more than ten years. Nor did any problems prevent Mr. Copell from leading a very active lifestyle. We find any prior acknowledgment of minor neck or back pain and Mr. Copell's choice to lead an active lifestyle falls woefully short of rebutting the use of the *Housley* presumption in this case. The trial court did not err in charging the jury with the *Housley* presumption.

### III. The Jury's Damage Awards.

Both Mr. Copell and Defendants appeal the amounts awarded by the jury for general damages and special damages. Initially, we note a major component of Defendants' argument that the jury awarded excessive general damages and special damages is that the trial court erred in charging the jury with the *Housley* presumption. As set forth earlier, we find that argument lacks merit.

### A. General Damages.

This court in *Gradnigo v. Louisiana Farm Bureau*, 08-1198, pp. 6-8 (La.App. 3 Cir. 3/4/09), 6 So.3d 367, 372-73, set forth the appellate standard of review for general damage awards:

> General damages are "inherently speculative" and unable to be fixed with mathematical certainty. *Wainwright v. Fontenot*, 00-492, p. 6 (La.10/17/00), 774 So.2d 70, 74 (citation omitted). This, consequently, means that the assessment of the appropriate amount of

such damages is a question of fact to be determined on a case-by-case basis, and because each case is different, the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The fact finder's determination is given "great deference" on appeal; therefore, the appellate court's role is to review that exercise of discretion. *Id.* Moreover, "[t]he facts submitted as evidence must be reviewed by the appellate court in the light most favorable to the judgment rendered." *Venissat v. St. Paul Fire & Marine Ins. Co.*, 06-987, p. 17 (La.App. 3 Cir. 8/15/07), 968 So.2d 1063, 1074 (citing *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337 (La.1993)).

The application of this standard has been explained by the supreme court as follows:

> In *Reck* [*v. Stevens*, 373 So.2d 498 (La.1979)], this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976); *Bitoun v. Landry*, 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La.1974).

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), and through *Reck* to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court

should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn*, 623 So.2d at 1260-61.

I.    *Physical Pain and Suffering.*

Mr. Copell notes, despite the jury's finding that the incident in question caused the cervical disc problems which led to his pain and necessitated a past surgery and a future surgery, the jury only awarded a total of $16,000.00 in general damages, all of which were for past and future physical pain and suffering. For the reasons which follow, we find this constituted a clear abuse of discretion on the jury's part.

The record established Mr. Copell was twenty-six (26) years old at the time of the incident. He testified he was severely jarred forward when the tire on his truck became dislodged causing the vehicle to abruptly stop. Mr. Copell returned to his job at Halliburton after leaving the dealership. He stated that shortly after the incident, his neck began hurting and he developed a severe headache. After informing his supervisor of the pain he was experiencing, Mr. Copell testified he was told to go home for the day and rest. Mr. Copell and his wife, Brandi, both testified his symptoms significantly worsened during the night and the following morning.

The following day, Mr. Copell went to an urgent care clinic, complaining of tenderness in his neck and headaches. He was examined by the physician and x-rays were taken. After being diagnosed with a soft tissue injury by the urgent care physician, Mr. Copell received two injections for spasms and pain. He also received a prescription for a muscle relaxer and pain reliever.

Due to his continued pain and discomfort, Mr. Copell sought further treatment from Dr. Sai Chennamsetty, a general practitioner, at Internal Medicine Group of Acadiana. He complained of neck tenderness, headaches and pain radiating into his left arm. After approximately three months of treatment with little to no improvement in Mr. Copell's symptoms, Dr. Chennamsetty ordered a MRI to be performed on January 20, 2016. Following a review of the results of the MRI, Mr. Copell was referred to Dr. William Brennan, a neurosurgeon.

Mr. Copell began treating with Dr. Brennan on February 13, 2016. Dr. Brennan explained to Mr. Copell that the MRI revealed a disc bulge with a narrowing of the neural foramen at the C5-6 level. Dr. Brennan recommended six weeks of physical therapy. During this period, Mr. Copell continued to complain of severe headaches, neck pain and radiating pain into his left arm. He later testified that most days he would lay for hours in his bed with the lights off to attempt to alleviate the pain he was suffering from the headaches and neck problems. Mr. Copell also tried using a traction kit at home, placing his neck into a harness to attempt to create tension into his spine. The little relief he received was short-lived and he underwent a second course of physical therapy. When that failed to alleviate his problems, Dr. Brennan recommended Mr. Copell undergo an anterior cervical discectomy and fusion surgery at the C5-6 level. Mr. Copell testified he agreed to the surgery because he was tired of living in pain and felt it would give him a better quality of life.

The surgery was performed on November 16, 2016 at Lafayette Surgical Specialties. Dr. Brennan testified the surgery required a two-inch long incision be cut on Mr. Copell's neck. The front of the herniated disc was then physically cut and material then removed from the inside. The nerve tunnel was bisected on each side to make it free from any disc fragments. A cadaver bone implant was then

placed into the newly freed disc space. The disc was then secured with a titanium plate secured with four screws.

Mr. Copell testified his neck pain and the pain radiating into his arm improved following the surgery. He stated he still has pain in the neck that he will have to live with, but it is easier to bear than prior to the surgery. He explained if he "overdoes things" the pain becomes worse. Mr. Copell testified he is able to cut his grass on his riding mower, but does suffer discomfort afterwards. He also testified as of the date of trial he still has tenderness and pain in his neck.

Following the November 16, 2016, surgical procedure, Defendants requested an independent medical examiner, Dr. Henry Eiserloh, examine Mr. Copell and review all his medical records. Dr. Eiserloh testified he saw no neurological defects in Mr. Copell's neck and questioned the necessity of the surgical procedure. Dr. Brennan countered that, in his opinion, the surgery was mandated because there was disc material from a herniated disc that was extending into the foramen and hitting a nerve, causing significant pain to Mr. Copell. While Dr. Eiserloh questioned the necessity of the first surgery and the type of surgical procedure performed, he did agree with Dr. Brennan that a second surgery would likely be required in the future.

After reviewing the record, we find that the $16,000.00 award for past and future physical pain and suffering is far below that which a reasonable trier of fact could assess in such a case. The jury verdict reflected an affirmative finding by the jury that Mr. Copell was injured as result of the incident with his truck. We cannot countenance the jury's decision to award only $16,000.00 for past and future physical pain and suffering when it concluded, as a result of Defendants' negligence, that Mr. Copell has dealt with consistent pain, has undergone a major surgical procedure, and by all the medical testimony will need another major surgical procedure. The medical evidence establishes Mr. Copell underwent more

13

conservative treatment for several months, including two courses of physical therapy, before accepting Dr. Brennan's recommendation that he undergo surgery. The record also supports that Mr. Copell only achieved significant relief of his pain and radiculopathy symptoms after he had undergone the cervical discectomy and fusion surgery, which was over fourteen months after the incident occurred. Prior to undergoing the surgery, Mr. Copell testified the constant neck pain, radicular pain and headaches affected his overall quality of life. Mr. Copell's wife confirmed that he was consistently in pain and was unable to help out around the house like he used to prior to the incident. She also stated he wanted the surgery because he was tired of living in pain and wanted a better life for his family.

Once an appellate court determines that the trier of fact abused its discretion in the award of general damages, it may examine prior awards for purposes of determining the highest or lowest point of an award that could reasonably be granted. *Youn*, 623 So.2d 1257. After reviewing prior awards in similar cases, we find that $100,000.00 is the lowest reasonable award that the jury could have awarded for Mr. Copell's past and future physical pain and suffering. *Bennet v. City of New Iberia*, 08-1369 (La.App. 3 Cir. 4/1/09), 7 So.3d 822 (this court affirmed a judgment awarding $100,000.00 in general damages for an injury that "was painful, required surgery and an extended period of recovery at home," alteration of normal levels of activity and play, and ongoing pain); *Ruffin v. Burton*, 08-893 (La.App. 4 Cir. 5/27/09), 34 So.3d 301 (the appellate court affirmed a general damages award of $125,000.00 to a plaintiff who was asymptomatic prior to an automobile accident which caused a bulge in the plaintiff's cervical spine with nerve root impingement, as well as significant shoulder problems); *Bouquet v. Wal-Mart Stores, Inc.,* 08-309 (La. 4/4/08), 979 So.2d 456 (the supreme court reinstated the jury's award of $115,000.00 in general damages for an injured plaintiff who had a lumbar disc

14

fusion, suffered movement restrictions and would require medicine for the remainder of her life to control her pain).

## II. *Mental Anguish and Emotional Distress.*

Mr. Copell also contends the jury abused its discretion in failing to award any damages for past and future mental pain and suffering. "Mental anguish and grief refers to the 'pain, discomfort, inconvenience, anguish, and emotional trauma' that accompany the injury. *McGee* [*v. A C And S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770,] 775." *Rachal v. Brouillette*, 12-794, p. 5 (La.App. 3 Cir. 3/13/13), 111 So.3d 1137, 1142, *writ denied*, 13-690 (La. 5/3/13), 113 So.3d 217.

Mr. Copell testified he began treating with Dr. James Blackburn, a psychiatrist, approximately three months before he had his surgery. Dr. Blackburn testified Mr. Copell had anxiety and emotional distress, particularly as it related to his inability to workout regularly as he had done since his teens. Dr. Blackburn acknowledged that Mr. Copell had continued to work out, but it was on an extremely modified basis. Dr. Blackburn also found Mr. Copell was dealing with anxiety over the impending surgery and the potential effects it would have on him long-term. Dr. Blackburn diagnosed Mr. Copell as having an adjustment disorder, which he noted could range in severity from moderate to disabling. Dr. Blackburn found Mr. Copell to be "concerned about his future and his ability to maintain employment, support his wife and family, maintain the good job that he had." Dr. Blackburn found it "var[ied] in intensity to the extent that it significantly affected his mood at times." He testified that Mr. Copell felt "guilt" and "frustration," feeling he should be able "to do better and that would increase his stress level which increased the pressure on his neck, increase his overall level of distress." Dr. Blackburn did testify that Mr. Copell "improved," and "learned to psychologically deal with his pain better." He also noted the anxiety Mr. Copell dealt with concerning the surgery abated to a large

degree after the surgical procedure was complete. Dr. Blackburn continued to see Mr. Copell every two months after the surgery to help him deal with his pain issues and marital issues.

Although Mr. Copell did eventually respond well to his psychiatric treatment with Dr. Blackburn, we find it was a clear abuse of discretion for the jury to not award any amount for mental anguish. After reviewing prior awards in similar cases we find that $25,000.00 is the lowest reasonable award that the jury could have awarded for Mr. Copell's past and future mental anguish. *Lantier v. Caskey*, 19-687, 19-688 (La.App. 3 Cir. 11/12/20), 308 So.3d 758 (this court affirmed a $50,000.00 award for past and future mental pain and suffering for significant cervical problems requiring surgery; the plaintiff complained of depression and anxiety over her injuries, tested positive for depression and was prescribed Xanax); *Ober v. Champagne*, 14-170 (La.App. 5 Cir. 12/16/14), 166 So.3d 254 (the appellate court affirmed the trial court's JNOV awarding $25,000.00 for past mental anguish for a plaintiff who was treated by a clinical psychologist and neuropsychiatrist for depression after injuries suffered in an automobile accident that required surgery).

III.   *Disability and Loss of Function.*

Although Mr. Copell assigns as error the jury's failure to render an award for disability and loss of function, he does not specifically discuss this category in his brief. Therefore, we affirm the jury's decision to award nothing for disability and loss of function.

IV.   *Loss of Enjoyment of Life.*

Mr. Copell contends the jury abused its discretion in not awarding any damages for loss of enjoyment of life. Loss of enjoyment of life refers to the detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to

the injury. *McGee*, 933 So.2d at 775. Moreover, loss of enjoyment of life is conceptually distinct from other components of general damages, including pain and suffering. *Id.*

The testimony demonstrated that following the accident, Mr. Copell's activities were diminished to an appreciable degree. Before the accident, Mr. Copell was extremely active and worked out daily. While he has been able to work out some, it is nowhere near as regular and on a modified basis. Defendants at trial introduced the records of the health clubs that Mr. Copell belonged to and found he had worked out ninety-three (93) times in eighteen months. This averages out to approximately five times per month, a far cry from Mr. Copell's prior routine of working out daily. Dr. Blackburn noted his routine of daily work outs was extremely important to him, and the effects it had on his self-worth were detrimental.

Mr. Copell also stated it is much more difficult for him to be useful around the house due to the pain he experiences when he extends himself physically. On occasion, when things have broken around the house, Mr. Copell has had to call his father for help. Both his wife and father testified Mr. Copell has been different with his family since the incident and his interaction has lessened during the period subsequent to the accident.

For the above reasons, we find it was a clear abuse of discretion for the jury to not award any amount for loss of enjoyment of life. After reviewing prior awards in similar cases, we find that $25,000.00 is the lowest reasonable award that the jury could have awarded for Mr. Copell's loss of enjoyment of life. *Donaldson v. Hudson Ins. Co.*, 12-1013 (La.App. 4 Cir. 4/10/13), 116 So.3d 46, (the plaintiff therein was awarded $25,000.00 for loss of enjoyment of life for injuries to his neck and back which limited his activities and he could no longer enjoy recreational activities, such as billiards or basketball); *Caskey v. Merrick Const. Co., Inc.*, 46,886 (La.App. 2

Cir. 3/14/12), 86 So.3d 186, (the plaintiff therein was awarded $25,000.00 in damages for loss of enjoyment of life due to back injuries which affected his sleeping and limited his activities such as hunting, doing yard work and helping around the house).

B. *Special Damages.*

Lastly, Mr. Copell maintains the jury abused its discretion in failing to award all future medical expenses established at trial. The jury awarded $95,000.00 in future medical expenses. As has been set forth, both Dr. Brennan and Dr. Eiserloh agreed Mr. Copell would require a second surgery on his neck in the future. The surgical procedure which Dr. Brennan believed would be necessary was estimated to have a one-time cost of $94,990.56. This clearly appears to be the basis for the jury's award of $95,0000.00 in future medical expenses. However, Mr. Copell argues this amount fails to provide anything for the costs associated with the surgery, including pre-operative and post-operative visits, costs of necessary prescription medications, physical therapy, etc.

Special damages are those damages which may be determined with some degree of certainty and include past and future medical expenses. The plaintiff bears the burden of proving entitlement to special damages by a preponderance of the evidence. *Cormier v. Colston*, 05-507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541. The award of future medical expenses must be supported by medical testimony indicating both their need and probable cost. *Hanks v. Seale*, 04-1485, p. 16 (La. 6/17/05), 904 So.2d 662, 672. When reviewing a factfinder's factual conclusions regarding special damages, appellate courts employ the manifest error standard of review. *See Deligans v. Ace American Ins. Co.*, 11-1244 (La.App. 3 Cir. 3/7/12), 86 So.3d 109.

As set forth, both Dr. Brennan and Dr. Eiserloh agreed a second surgery was necessary. Mr. Copell presented the testimony of Dr. Lacy Sapp, a certified life care planner, who consulted with Mr. Copell's treating physicians to determine what future medical care he would likely need and associated costs. She testified that among the many things Mr. Copell would need in the future were pre-surgery appointments with a spine surgeon, post-operative visits after the surgery, physical therapy, X-rays, MRI's, pre-operative lab work and medication. Her figure for future medicals were priced between $217,393.06 to $308,774, which included the cost of the expected future surgery.

Defendants do not dispute the specific amounts of costs set forth by Dr. Sapp. In fact, Elizabeth Bauer, who was hired by Defendants to review Dr. Sapp's medical care costs analysis, testified "I don't have any problems with Dr. Sapp's pricing." Defendants, instead, simply cling to the meritless argument that the incident in question did not cause Mr. Copell a serious neck injury or the need for any surgery. Accordingly, we find it clear the jury abused its discretion in failing to award the future medical costs which were supported by the medical testimony as to necessity and costs. We will amend the prior award of $95,000.00 for future medical expenses and raise it to the lowest reasonable amount of $217,393.06.

## DECREE

For the reasons assigned, we amend the jury's award of past and future pain and suffering from $16,000.00 to $100,000.00. We also amend the jury's award of future medical expenses from $95,000.00 to $217,393.06. We reverse the jury's denial of damages for past and future mental anguish and render an award of $25,000.00 for that element of damages. We also reverse the jury's denial of damages for loss of enjoyment of life and render an award of $25,000.00 for that element of damages. In all other respects, the judgment below is affirmed. Costs of

19

this appeal are assessed to Defendants, Arceneaux Ford and Amtrust North America,

Inc.

**AMENDED IN PART AND, AS AMENDED, AFFIRMED; REVERSED IN PART AND RENDERED.**